The STATE, ex rel. BEDARD et al., Appellants,

v.

VILLAGE OF LOCKBOURNE, et al., Appellees.

[Cite as *State, ex rel. Bedard, v. Lockbourne* (1990), 69 Ohio App.3d 452.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–1372.

Decided Sept. 18, 1990.

*J. Douglas Stewart,* for appellants.

*James C. Thompson,* for appellee Village of Lockbourne, Lockbourne Village Council.

*Poulos & Hunter* and *John G. Poulos,* for appellee Dorothy Bobst Needham.

MᴄCᴏʀᴍᴀᴄ, Judge.

Appellants, Gary and Clara Bedard, appeal from the judgment of the Franklin County Court of Common Pleas denying their request for a writ of mandamus to be issued to the Village Council of Lockbourne, Ohio to vacate its action granting appellee Dorothy Bobst Needham permission to place a mobile home on lot 84 and to require a proper application for her use subject to public knowledge and debate and to issue an injunction requiring her to remove the mobile home.

Appellants assert the following assignments of error:

"I. The trial court committed prejudicial error in finding that there was no evidence that Lock Street was ever dedicated.

"II. The trial court erred in concluding that the defendant, Bobst family, owned the 35 × 150 foot tract east of lot 84 (which strip falls wholly within Lock Street).

"A. The 1896 deed to George Gouldner of the 35 × 150 foot strip of land east of lot 84 as found in Deed Book Volume 287, page 275 (Defendant's Exhibit # 3) is a nullity.

"III. The trial court committed prejudicial error in concluding that the appellants received 15.5 feet (of the width) of Lock Street pursuant to their request and the subsequent grant by the village of Lockbourne to vacate the easterly one-half portion of Lock Street.

"IV. The trial court committed prejudicial error by concluding that the county [*sic*, village] did not act improperly in granting the defendants (Bobst family) permission to put their mobile home on their (Bobst) property.

"V. The report of the referee filed on June 20,. 1989, fails to satisfy the spiritual and specific requirements of Civil Rule 53(E)(1) for the reasons that the report sets forth no findings of fact, no conclusions of law, and arguably no recommendations to the trial judge. These deficiencies preclude the trial judge from making an independent analysis of the issues involved in the dispute."

The dispute in this matter concerns the ownership of a parcel of land which separates lots 84 and 86 in the village of Lockbourne, Franklin County, Ohio. Lockbourne was originally platted in 1837. Some time thereafter, the original plat was lost or destroyed and a second plat was prepared by the Franklin County Engineer under the direction of the county commissioners and filed of record in 1892. As platted, lot 84, owned in fee by appellee, Dorothy Bobst Needham, is separated from lot 86, owned in fee by appellants, by a sixty-six-foot-by-one-hundred-fifty-foot parcel designated on the plat as Lock Street.

Both lots 84 and 86 are fifty feet wide. It appears from the evidence that Lock Street has not been used as a public thoroughfare nor has any attempt been made by the village of Lockbourne, also an appellee herein, to pave or otherwise improve the parcel. The evidence also indicates that, for at least a portion of the time between 1837 and 1946, a house stood on the property in question.

In 1979, appellants applied to the village of Lockbourne to vacate the eastern half of Lock Street, which is adjacent to their lot. The village council passed Ordinance No. 5–79, vacating the east half of Lock Street between Spring Alley and Commerce Street. In 1985, appellants were granted a building permit to construct an addition to their home which, when built, extended into the vacated portion of Lock Street.

In 1986, the Lockbourne Village Council passed a resolution permitting appellee to place a mobile home measuring sixty-six feet in length on lot 84 after an existing structure was demolished. Since lot 84 is only fifty feet in width, the trailer necessarily extends beyond the limits of lot 84. However, appellee contends that she is the fee owner of a thirty-five-by-one-hundred-fifty-foot strip of land immediately adjacent to her lot by chain of title dating to an original 1896 deed. Appellee contends that Lock Street was never properly dedicated to the village of Lockbourne and, therefore, the village never acquired fee title to the land and she holds superior title to the thirty-five feet.

The distances and amount of property owned are of importance because of Lockbourne Ordinance No. 171, passed by the Lockbourne Village Council on March 12, 1974. Section 2 of Ordinance No. 171 provides:

"*Section 2:* That no house trailer used for residential or living purposes shall be located less than twenty feet from any public street, alley, residential or commercial building, nor shall any house trailer be located less than ten feet from any real property boundary line in said Village."

Appellants argue that, since appellee's trailer is only eight feet ten inches from the center line of Lock Street and therefore only eight feet ten inches from the vacated portion which is now owned by appellants, and since it is only thirteen feet ten inches from appellants' expanded residence, the council acted arbitrarily and unreasonably when it granted appellee permission to locate her trailer in such a fashion. Appellee argues that, since she owns thirty-five feet of the platted Lock Street, her mobile home is a sufficient distance from the lot line and she is not in violation of the Lockbourne ordinance. She contends that it is appellants and not she who encroached upon the property of another.

Appellants' first four assignments of error involve the same issue and will be discussed together. The question is who owns the sixty-six-by-one-hundred-fifty-foot strip of land platted as Lock Street. Appellants claim ownership of thirty-three feet on the east side of Lock Street by way of council's vacation of a duly dedicated street. Appellee contends that the street was never properly dedicated and therefore, her title, dating to 1896, is paramount and vests her with a fee interest in thirty-five feet on the west side of Lock Street. The trial court concluded that Lock Street was never properly dedicated and, hence, appellee's title was superior; nonetheless, the court concluded that appellant was the owner of 15.5 feet off the eastern side of the street by way of council's dedication. The figure 15.5 feet was arrived at by excluding thirty-five feet from the sixty-six-foot width of Lock Street and concluding that, since the vacating ordinance failed to address the width of the land vacated, only one-half of the thirty-one feet was actually vacated. While portions of each argument may have merit, we do not agree totally with any theory advanced.

It must first be noted that, despite the fact that both parties have cited R.C. Chapter 7 in its current version in support of their positions, that is not the law applicable to this action. The pertinent law is that which was in effect at the time of the original platting, 1837, and the subsequent replatting, 1892.

██ Ground may be dedicated to public use either by statute or according to the rules of the common law. *Lessee of Fulton v. Mehrenfeld* (1858), 8 Ohio St. 440. The statute in effect at the time the original plat was filed provided that the original proprietors of the town must prepare a plat, including lots to be sold and public grounds to be dedicated, acknowledge the plat by signing it in front of one authorized to acknowledge deeds, and record the plat with the county recorder. 29 Ohio Laws 350–351. Once the statutory prerequisites were fulfilled, no other act was required to vest a municipality with a fee interest in the public grounds to be held by the municipality in trust for the use of the inhabitants. *Cincinnati v. Commrs. of Hamilton Cty.* (1835), 7 Ohio 88. However, even if the statutory requirements were not met, the property may have been dedicated at common law if it was the intention of the original grantors to dedicate the ground, and the town subsequently accepted the dedication by some affirmative act. Acceptance was to be gleaned from all the circumstances surrounding each individual case. *Lessee of Fulton, supra.*

██ In the case at bar, we are without the aid of the original plat of Lockbourne, the plat having been destroyed. However, Revised Statutes Title 12, Division 8, Chapter 11, Subdivision IV, in effect in 1892, provided for that contingency. A review of that statute, together with the reconstructed plat

and engineer's notes, shows that there was compliance with the statute concerning lost or destroyed plats. Once compliance was completed, pursuant to the above-cited provision, Section 2625 of that statute, 70 Ohio Laws 65, 66, Section 5, provided that the new plat would be prima facie evidence of the plat of the political subdivision at issue. Therefore, since appellee has offered no evidence to dispute the correctness, in form or procedure, of the reconstructed plat, it is assumed that the public grounds outlined therein were properly dedicated to public use. Thus, the fee title to Lock Street was vested in the village of Lockbourne no later than 1892, some four years prior to the 1896 deed upon which appellee relies. Therefore, the trial court erred in determining that appellee held superior title to the western thirty-five feet of Lock Street based upon the 1896 deed.

 Our inquiry does not end with this determination. A municipality holds only a determinable fee for land used as streets or alleys. *Callen v. Columbus Edison Elec. Light Co.* (1902), 66 Ohio St. 166, 64 N.E. 141. The adjacent landowners retain the reversionary interest in the land when the city abandons its use. R.C. 723.08. Each landowner's interest extends to the midpoint of the street or alley to which they are adjacent. The evidence presented indicates that, even if Lockbourne originally obtained an interest in Lock Street, that interest has never been pursued and, as such, has been abandoned. The street has never been used as a street nor has it been paved or in any way made passable. Trees and other vegetation have been permitted to grow up within its platted boundaries. Evidence was introduced indicating that a building, originally a tavern and later a home, was permitted to be maintained within the boundaries of Lock Street for many years. No eminent domain proceeding was ever instituted by the city to remove the house and to preserve the city's interest in Lock Street. Finally, two property owners have been permitted to establish homes encroaching on what would have been Lock Street if the city chose to improve it. All of this evidence is consistent with an abandonment of Lock Street in favor of the abutting property owners. Consequently, the land contained within the platted boundaries of Lock Street reverts equally to the appellee and appellants, with them becoming owners of thirty-three-by-one-hundred-fifty-foot parcels extending from their lot line to the center of what is designated on the plat as Lock Street.

We also disagree with the trial court's finding that appellee retained her thirty-five-foot-by-one-hundred-fifty-foot interest based upon her paramount title and its conclusion that appellants received a fifteen-and-one-half-by-one-hundred-fifty-foot parcel by way of Ordinance No. 5–79, which vacated the eastern one-half of Lock Street. For the village to vacate Lock Street, it must

have had an interest in the street to vacate. However, by concluding that appellee's title was superior to that of the village, the trial court had to conclude that the street was never properly dedicated. These two conclusions are mutually exclusive and cannot both be arrived at. If appellee holds title to a thirty-five-foot strip and the street was never properly dedicated, true ownership of the remaining thirty-one feet could only be established by proving a chain of title from the town's original grantors in 1837.

■ Having determined that each party owns thirty-three feet of Lock Street, we must determine whether the trial court prejudicially erred in denying appellants' request for a writ of mandamus. Based upon what we have previously determined, each party owns thirty-three feet of Lock Street, which means that appellee's trailer is located eight feet ten inches from the boundary line and thirteen feet ten inches from appellants' residence in apparent violation of Section 2 of Ordinance No. 171.

Since the trial court determined that appellee owned a strip of land thirty-five feet wide, it did not address the factual issues concerning the location of appellee's trailer and appellants' home or the legal or equitable ramifications thereof. There exists the question of whether the Lockbourne Village Council's resolution granting appellee permission to locate her trailer where she did operated as a valid zoning variance, or under what circumstances a variance can be granted. Since the record does not contain evidence of Lockbourne's zoning variance procedures, we are unable to determine these issues. Until these issues are determined, it is premature to decide whether the Lockbourne Village Council abused its discretion in allowing placement of the mobile home in apparent violation of Section 2 of Ordinance No. 171. Since no zoning variance or other justification is demonstrated on the record, the trial court should have issued a writ of mandamus to the Lockbourne Village Council ordering it to vacate its action granting Needham permission to place the trailer on lot 84 and to proceed with applicable variance procedures as mandated by the laws pertaining thereto. The trial court did not err in denying an injunction ordering the mobile home removed as that action is premature.

Appellants' first four assignments of error are sustained to the extent indicated herein.

■ Appellants' final assignment of error is that the referee's report failed to satisfy the requirements of Civ.R. 53(E)(1) and, therefore, the trial court was precluded from making an independent analysis of the issues and evidence presented to the referee.

Civ.R. 53(E)(1) provides:

*"Contents and filing.* The referee shall prepare a report upon the matters submitted by the order of reference. The referee shall file the report with the clerk of the court and shall mail a copy to the parties. In an action on the merits of an issue to be tried without a jury, the referee shall file with the report a transcript of the proceedings and of the evidence only if the court so directs."

It has been held that a referee's report must:

" * * * [C]ontain a statement of facts forming the basis for the referee's recommendation to the trial judge. Absent such a statement, the court cannot adopt the recommendation because it lacks the necessary information to make the required independent analysis of the case." *Nolte v. Nolte* (1978), 60 Ohio App.2d 227, 14 O.O.3d 215, 396 N.E.2d 807, paragraph one of the syllabus.

Referees serve in an advisory capacity and have no authority to enter final judgment. The court need not accept the report of the referee but may " * * * * adopt, reject or modify the report; hear additional evidence; return the report to the referee with instructions; or hear the matter itself." Civ.R. 53(E)(2). Furthermore, the court may request that the report be supplemented with a transcript of proceedings and any evidence admitted if it so desires. Civ.R. 53(E)(1). To comply with Civ.R. 53, a referee's report must refer to facts contained in the record that support the conclusion and recommendation of the referee. *Conn Constr. Co. v. Dept. of Transp.* (1983), 14 Ohio App.3d 90, 14 OBR 104, 470 N.E.2d 176.

The referee's report submitted in the present action is hardly a model of clarity or an example of how a Civ.R. 53 report should be prepared. However, the referee's comments, made on the record, are sufficient to comply with the Civil Rules. The referee stated her factual findings, in that she determined that a valid dedication was never made and that appellee possessed a superior title. These were the two findings that were essential to arrive at the conclusion that she did. Additionally, she stated her legal conclusions sufficiently for the court to conclude that her final recommendation was to deny the writ.

It appears that the facts of this action were largely undisputed. The issues presented required an application of those facts to the applicable law and arriving at a final determination of ownership. If factual matters were left unresolved, the trial court could have requested a transcript or resubmitted the matter to the referee. The trial court determined that this was unnecessary. Given the nature of the facts and the referee's inartful yet sufficient report, we will not substitute our judgment for that of the trial court on this issue.

Appellants' fifth assignment of error is overruled.

Appellants' first four assignments of error are sustained to the extent indicated herein. Appellants' fifth assignment of error is overruled. The judgment of the trial court is reversed. The trial court is instructed to issue a writ of mandamus to the Lockbourne Village Council ordering it to vacate its action granting Dorothy Bobst Needham permission to place a mobile home on lot 84 and to proceed with any applicable variance procedures as mandated by the laws pertaining thereto, following which it shall redetermine whether, according to proper use of that procedure, Needham shall be granted permission to use lot 84 as it presently is used.

*Judgment reversed*
*and cause remanded*
*with instructions.*

REILLY, P.J., and SHAW, J., concur.

HENRY E. SHAW, J., of the Delaware County Common Pleas Court, sitting by assignment.